```
IN THE UNITED STATES DISTRICT COURT
   FOR THE DISTRICT OF SOUTH CAROLINA
           SPARTANBURG DIVISION
```

| | |
|---|---|
| William Dunn, | Case No. 7:11-cv-02440-HMH-JDA |
| Plaintiff, | **REPORT AND RECOMMENDATION OF MAGISTRATE JUDGE** |
| v. | |
| Officer Leslie Harrell, | |
| Defendant. | |

This matter is before the Court on a motion for summary judgment filed by Defendant. [Doc. 23.] Plaintiff, proceeding pro se, brought this civil rights action under 42 U.S.C. § 1983. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Local Rule 73.02(B)(2)(d), D.S.C., this magistrate judge is authorized to review all pretrial proceedings in cases filed under 42 U.S.C. § 1983 and to submit findings and recommendations to the District Court.

Plaintiff filed this action on September 12, 2011, alleging claims related to a traffic stop, his arrest, and a search of his vehicle. [Doc. 1.] Defendant filed a motion for summary judgment on May 2, 2012. [Doc. 23.] On May 3, 2012, the Court filed an Order pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir.1975), advising Plaintiff of the summary judgment procedure and of the possible consequences if he failed to adequately respond to Defendant's motion. [Doc. 24.] Receiving no response from Plaintiff, the Court issued an Order on June 14, 2012, allowing Plaintiff through July 5, 2012 to respond to Defendant's motion and advising Plaintiff that, if he failed to respond, his case would be subject to dismissal pursuant to Rule 41(b) of the Federal Rules of Civil Procedure. [Doc.

27.] On July 5, 2012, Plaintiff filed a response in opposition to Defendant's motion for summary judgment. [Doc. 30.] Accordingly, Defendant's motion is now ripe for review.

## **BACKGROUND**[1]

Early in the morning of September 14, 2009, Plaintiff was stopped by Defendant for riding close to the white line on Interstate 85. [Doc. 1 at 3.] Plaintiff denied he had been drinking and offered to take a breathalyzer test. [*Id.*] After checking Plaintiff's license and paperwork, Defendant told Plaintiff there was a problem with people transporting drugs on the highways and asked if he could search Plaintiff's vehicle; Plaintiff declined. [*Id.*] Irritated, Defendant said he would call for a dog. [*Id.*] Other officers arrived, and after an hour, Plaintiff asked how long he would have to wait for the dog. [*Id.*] Another officer said he would let Defendant know Plaintiff had asked how long it would take, and Defendant came to Plaintiff's window and asked Plaintiff to step out of the car. [*Id.*] Once they were at the rear of the car, Defendant asked Plaintiff what his problem was and told Plaintiff that, if he had let Defendant search the car, Plaintiff would probably be gone. [*Id.*] Plaintiff asked Defendant if Plaintiff had to have his rights violated to not be inconvenienced and told Defendant that Plaintiff was being subject to profiling. [*Id.*] At that point, Defendant placed Plaintiff under arrest for unlawful use of a lane, and after Plaintiff was placed in the patrol car, Defendant and other officers began searching Plaintiff's car. [*Id.*]

Plaintiff's car was thoroughly searched, and his things were thrown on the side of the road. [*Id.* at 4.] Plaintiff's car was towed, and he was taken to jail. [*Id.*] When Plaintiff's car was returned the next day, some of his possessions were missing or

---

[1] The following background, forming the basis of Plaintiff's claims, is a summary of Plaintiff's allegations contained in the Complaint, Docket Entry Number 1.

2

damaged, pieces of the car were damaged, and not all pieces of the car that had been removed were properly replaced. [*Id.*] Plaintiff tried to get a copy of the dash cam recording,[2] but no one was helpful in procuring the recording. [*Id.*] Plaintiff was charged with driving in the wrong direction and driving without insurance, but the charges were later dropped. [*Id.*]

Plaintiff requests compensation for his missing and damaged items and to be reimbursed for the tow fee. [*Id.* at 5.] Plaintiff also requests $100,000, or an amount the Court deems reasonable, in punitive damages. [*Id.*]

## APPLICABLE LAW

**Liberal Construction of Pro Se Complaint**

Plaintiff brought this action pro se, which requires the Court to liberally construe his pleadings. *Estelle v. Gamble*, 429 U.S. 97, 106 (1976); *Haines v. Kerner*, 404 U.S. 519, 520 (1972) (per curiam); *Loe v. Armistead*, 582 F.2d 1291, 1295 (4th Cir. 1978); *Gordon v. Leeke*, 574 F.2d 1147, 1151 (4th Cir. 1978). Pro se pleadings are held to a less stringent standard than those drafted by attorneys. *Haines*, 404 U.S. at 520. Even under this less stringent standard, however, the pro se complaint is still subject to summary dismissal. *Id.* at 520–21. The mandated liberal construction means only that if the court can reasonably read the pleadings to state a valid claim on which the plaintiff could prevail, it should do so. *Barnett v. Hargett*, 174 F.3d 1128, 1133 (10th Cir. 1999). A court may not construct the plaintiff's legal arguments for him. *Small v. Endicott*, 998 F.2d 411, 417–18

---

[2] Presumably, Plaintiff requested the recording of the traffic stop and search from the dashboard camera in Defendant's car.

3

(7th Cir. 1993). Nor should a court "conjure up questions never squarely presented." *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985).

**Requirements for a Cause of Action Under § 1983**

Section 1983 provides a private cause of action for plaintiffs alleging constitutional violations by persons acting under color of state law. Section 1983 provides, in relevant part,

> [e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States or any person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

42 U.S.C. § 1983. To establish a claim under § 1983, a plaintiff must prove two elements: (1) that the defendant "deprived [him] of a right secured by the Constitution and laws of the United States" and (2) that the defendant "deprived [him] of this constitutional right under color of [State] statute, ordinance, regulation, custom, or usage." *Mentavlos v. Anderson*, 249 F.3d 301, 310 (4th Cir. 2001) (citation and internal quotation marks omitted).

The under-color-of-state-law element, which is equivalent to the "state action" requirement under the Fourteenth Amendment,

> reflects judicial recognition of the fact that most rights secured by the Constitution are protected only against infringement by governments. This fundamental limitation on the scope of constitutional guarantees preserves an area of individual freedom by limiting the reach of federal law and avoids imposing on the State, its agencies or officials, responsibility for conduct for which they cannot fairly be blamed.

*Id.* at 310 (quoting *Dowe v. Total Action Against Poverty in Roanoke Valley*, 145 F.3d 653, 658 (4th Cir. 1998)) (internal citations and quotation marks omitted). Nevertheless, "the deed of an ostensibly private organization or individual" may at times be treated "as if a State has caused it to be performed." *Brentwood Acad. v. Tenn. Secondary Sch. Athletic Ass'n*, 531 U.S. 288, 295 (2001). Specifically, "state action may be found if, though only if, there is such a 'close nexus between the State and the challenged action' that seemingly private behavior 'may be fairly treated as that of the State itself.'" *Id.* (quoting *Jackson v. Metro. Edison Co.*, 419 U.S. 345, 351 (1974)). State action requires both an alleged constitutional deprivation "caused by the exercise of some right or privilege created by the State or by a rule of conduct imposed by the State or by a person for whom the State is responsible," and that "the party charged with the deprivation must be a person who may fairly be said to be a state actor." *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 937 (1982). A determination of whether a private party's allegedly unconstitutional conduct is fairly attributable to the State requires the court to "begin[ ] by identifying 'the specific conduct of which the plaintiff complains.'" *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 51 (quoting *Blum* v. *Yaretsky*, 457 U.S. 991, 1004 (1982)).

**Summary Judgment Standard**

Rule 56 states, as to a party who has moved for summary judgment:

> The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.

Fed. R. Civ. P. 56(a). A fact is "material" if proof of its existence or non-existence would affect disposition of the case under applicable law. *Anderson v. Liberty Lobby, Inc.*, 477

U.S. 242, 248 (1986).  An issue of material fact is "genuine" if the evidence offered is such that a reasonable jury might return a verdict for the non-movant.  *Id.* at 257.  When determining whether a genuine issue has been raised, the court must construe all inferences and ambiguities against the movant and in favor of the non-moving party.  *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962).

The party seeking summary judgment shoulders the initial burden of demonstrating to the court that there is no genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  Once the movant has made this threshold demonstration, the non-moving party, to survive the motion for summary judgment, may not rest on the allegations averred in his pleadings.  *Id.* at 324.  Rather, the non-moving party must demonstrate specific, material facts exist that give rise to a genuine issue.  *Id.*  Under this standard, the existence of a mere scintilla of evidence in support of the non-movant's position is insufficient to withstand the summary judgment motion.  *Anderson,* 477 U.S. at 252.  Likewise, conclusory allegations or denials, without more, are insufficient to preclude granting the summary judgment motion.  *Ross v. Commc'ns Satellite Corp.*, 759 F.2d 355, 365 (4th Cir. 1985), *overruled on other grounds*, 490 U.S. 228 (1989).  "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.  Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson*, 477 U.S. at 248.  Further, Rule 56 provides in pertinent part:

> A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:

> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1). Accordingly, when Rule 56(c) has shifted the burden of proof to the non-movant, he must produce existence of a factual dispute on every element essential to his action that he bears the burden of adducing at a trial on the merits.

## **DISCUSSION**

Defendant argues he is entitled to qualified immunity because his conduct did not violate any clearly established rights of which a reasonable government official would have known. [Doc. 23-1 at 9–10.] Specifically, Defendant contends Plaintiff has failed to show that it would have been clear to an objectively reasonable officer that detaining and arresting Plaintiff would violate Plaintiff's constitutional rights. [*Id.* at 10.] The Court agrees.[3]

---

[3] To the extent Plaintiff brings this suit against Defendant in his official capacity, Defendant is entitled to immunity pursuant to the Eleventh Amendment. The Eleventh Amendment prohibits federal courts from entertaining an action against a state. *See, e.g.*, *Alabama v. Pugh*, 438 U.S. 781, 782 (1978) (per curiam) (citations omitted); *Hans v. Louisiana*, 134 U.S. 1, 10–11 (1890). Further, Eleventh Amendment immunity "extends to 'arm[s] of the State,' including state agencies and state officers acting in their official capacity," *Cromer v. Brown*, 88 F.3d 1315, 1332 (4th Cir. 1996) (alteration in original) (internal citations omitted), because "a suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office . . . [and] is no different from a suit against the State itself," *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989) (internal citation omitted). Therefore, Eleventh Amendment immunity protects state agencies and state officials sued in their official capacity from liability for monetary damages under 42 U.S.C. § 1983. *Id.* As a result, to the extent Plaintiff has alleged claims against Defendant in his official capacity, those claims must be dismissed because Defendant in his official capacity is entitled to immunity pursuant to the Eleventh Amendment.

Qualified immunity protects government officials performing discretionary functions from civil damage suits as long as the conduct in question does not "violate clearly established rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Thus, qualified immunity does not protect an official who violates a constitutional or statutory right of a plaintiff that was clearly established at the time of the alleged violation such that an objectively reasonable official in the official's position would have known of the right. *Id.* Further, qualified immunity is "an immunity from suit rather than a mere defense to liability." *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985).

To determine whether qualified immunity applies, a court must determine "'whether the plaintiff has alleged the deprivation of an actual constitutional right at all[] and . . . whether that right was clearly established at the time of the alleged violation.'" *Wilson v. Layne*, 526 U.S. 603, 609 (1999) (quoting *Conn v. Gabbert*, 526 U.S. 286, 290 (1999)). "[W]hether an official protected by qualified immunity may be held personally liable for an allegedly unlawful official action generally turns on the 'objective legal reasonableness' of the action[,] assessed in light of the legal rules that were 'clearly established' at the time it was taken." *Anderson v. Creighton*, 483 U.S. 635, 639 (1987) (citing *Harlow*, 457 U.S. at 819). For purposes of this analysis, a right is "clearly established" if "[t]he contours of the right [are] sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Id.* at 640.

District court and courts of appeals judges are "permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be

addressed first in light of the circumstances in the particular case at hand." *Pearson v. Callahan*, 555 U.S. 223, 236 (2009). If a court decides in the negative the first prong it considers—i.e., the court decides the plaintiff has not alleged the deprivation of an actual constitutional right or the right was not clearly established at the time of the alleged violation—the court need not consider the other prong of the qualified immunity analysis. *See id.* at 243–45; *Torchinsky v. Siwinski*, 942 F.2d 257, 260 (4th Cir. 1991) (holding the court "need not formally resolve" the constitutional question of "whether the [plaintiffs] were arrested without probable cause" to address the plaintiffs' § 1983 claim; the court stated that it "need only determine whether [the defendant]—a deputy sheriff performing within the normal course of his employment—acted with the objective reasonableness necessary to entitle him to qualified immunity").

Here, liberally construing the Complaint, Plaintiff alleges Defendant's actions constituted a search and seizure violating Plaintiff's Fourth Amendment rights. Accordingly, to determine whether Defendant is entitled to qualified immunity, the Court must determine whether Defendant acted with objective reasonableness in arresting Plaintiff and searching Plaintiff's car.

**Defendant's Seizure of Plaintiff Was Objectively Reasonable**

The Fourth Amendment proscribes "unreasonable searches and seizures."[4] U.S. Const. amend. IV. "A person is seized by the police and thus entitled to challenge the government's action under the Fourth Amendment when the officer, by means of physical force or show of authority, terminates or restrains his freedom of movement, through

---

[4] The Fourth Amendment is enforceable against the States through the Fourteenth Amendment. *Mapp v. Ohio*, 367 U.S. 643, 655 (1961).

means intentionally applied." *Brendlin v. California*, 551 U.S. 249, 254 (2007) (citation, quotation, and emphasis omitted). Seizures are "reasonable" only if based on probable cause. *Dunaway v. New York*, 442 U.S. 200, 214 (1979).

The test to determine whether probable cause existed for a seizure is an objective one, based on the totality of the circumstances. *Illinois v. Gates*, 462 U.S. 213, 230–31 (1983); *see also Mazuz v. Maryland*, 442 F.3d 217, 224 (4th Cir. 2006) ("Whether a Fourth Amendment violation has occurred turns on an objective assessment of the officer's actions in light of the facts and circumstances confronting him at the time, and not on the officer's actual state of mind at the time the challenged action was taken." (citing *Maryland v. Macon*, 472 U.S. 463, 470–71 (1985))). The totality of the circumstances includes "the facts and circumstances within [the officers'] knowledge and of which they had reasonably trustworthy information," *Beck v. Ohio*, 379 U.S. 89, 96 (1964), and such facts and circumstances constitute probable cause if they are "sufficient to warrant a prudent man in believing that the petitioner had committed or was committing an offense," *id.* "If an officer has probable cause to believe that an individual has committed even a very minor criminal offense in his presence, he may, without violating the Fourth Amendment, arrest the offender." *Atwater v. City of Lago Vista*, 532 U.S. 318, 354 (2001).

In the context of traffic stops, even minor traffic violations give officers probable cause to conduct a traffic stop. *Wallace v. Johnston*, No. 9:05 CV 2950 MBS, 2007 WL 1068477, at *4 (D.S.C. Mar. 30, 2007) (citing *Whren v. United States*, 517 U.S. 806, 810 (1996)). An officer's subjective motivations do not invalidate a traffic stop that is supported by probable cause. *Whren*, 517 U.S. at 813; *see also Ashcroft v. al-Kidd*, --- U.S. ---, 131

S. Ct. 2074, 2082 (2011) ("Our unanimous opinion [in *Whren*] held that we would not look behind an objectively reasonable traffic stop to determine whether racial profiling or a desire to investigate other potential crimes was the real motive."); *Bond v. United States*, 529 U.S. 334, 338 n.2 (2000) ("The parties properly agree that the subjective intent of the law enforcement officer is irrelevant in determining whether that officer's actions violate the Fourth Amendment . . . ; the issue is not his state of mind, but the objective effect of his actions."). However, "[t]raffic stops must be limited in both scope and duration." *U.S. v. Mubdi*, --- F.3d ---, 2012 WL 3243478, at *6 (4th Cir. 2012). Thus,

> [i]f a police officer observes a traffic violation, he is justified in stopping the vehicle for long enough to issue the driver a citation and determine that the driver is entitled to operate his vehicle. The driver's consent or reasonable suspicion of a crime is necessary to extend a traffic stop for investigatory purposes. In order to demonstrate reasonable suspicion, a police officer must offer "specific and articulable facts" that demonstrate at least "a minimal level of objective justification" for the belief that criminal activity is afoot. Judicial review of the evidence offered to demonstrate reasonable suspicion must be commonsensical, focused on the evidence as a whole, and cognizant of both context and the particular experience of officers charged with the ongoing tasks of law enforcement.

*United States v. Branch*, 537 F.3d 328, 337 (4th Cir. 2008) (citation omitted).

Finally, "[t]he validity of [an] arrest does not depend on whether the suspect actually committed a crime; the mere fact that the suspect is later acquitted of the offense for which he is arrested is irrelevant to the validity of the arrest." *Michigan v. DeFillippo*, 443 U.S. 31, 36 (1979). "The Constitution does not guarantee that only the guilty will be arrested. If it did, § 1983 would provide a cause of action for every defendant acquitted—indeed, for every suspect released." *Baker v. McCollan*, 443 U.S. 137, 145 (1979). Accordingly, the

probable cause standard is lower than the standard to convict—probable cause requires only "'a reasonable ground for belief of guilt,'" *Brinegar v. United States*, 338 U.S. 160, 175 (1949) (quoting *McCarthy v. De Armit*, 99 Pa. 63, 69 (1881)), but to convict a defendant, the State must prove the defendant's guilt beyond a reasonable doubt, *see, e.g., United States v. Booker*, 543 U.S. 220, 230 (2005) (quoting *In re Winship*, 397 U.S. 358, 364 (1970)). Thus, neither subsequently dropped charges nor an acquittal indicate a lack of probable cause for an arrest.

Here, Plaintiff seems to suggest he had not committed a traffic offense and contends Defendant's actions were the result of profiling. [*See* Doc. 1 at 3–4.] However, Plaintiff has failed to provide any evidence other than his own conclusory statements to demonstrate Defendant lacked probable cause to initiate a traffic stop, and therefore, Plaintiff has failed to demonstrate a genuine issue of material fact as to whether Defendant's decision to initiate the traffic stop was objectively reasonable. *See* Fed. R. Civ. P. 56(c)(1) ("A party asserting that a fact . . . is genuinely disputed must support the assertion by . . . citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . , admissions, interrogatory answers, or other materials . . . ."); *Celotex*, 477 U.S. at 323–24 (stating that once the party seeking summary judgment demonstrates there is no genuine issue of material fact, the non-moving party, to survive the motion for summary judgment, must demonstrate specific, material facts exist that give rise to a genuine issue); *Ross*, 759 F.2d at 365 (stating that conclusory allegations or denials, without more, are insufficient to preclude granting a summary judgment motion).

Moreover, the evidence of record demonstrates Defendant's actions were objectively reasonable. Defendant initiated a traffic stop of Plaintiff because he observed Plaintiff commit a traffic violation.[5] [Doc. 23-2 ¶¶ 2–3.] Defendant has averred Plaintiff's actions and responses to Defendant's questions were consistent with someone engaged in illegal activity. [Doc. 23-2 ¶ 8.] For example, Plaintiff was driving an out-of-state rental car at an unusual time of day and told Defendant he was going to see a friend but could not tell Defendant where he was going to meet his friend. [*Id.* ¶¶ 2, 4, 7.] Further, in conducting the stop, Defendant could not verify that there was insurance coverage for the vehicle.[6] [Doc. 23-2 ¶¶ 5–6; *see id.* ¶ 15 (stating evidence of insurance was presented at the hearing on the charges).] Therefore, on this record, it was objectively reasonable for Defendant to (1) conduct a traffic stop of Plaintiff, *see Wallace*, 2007 WL 1068477, at *4; (2) conclude he had sufficient suspicion to detain Plaintiff for purposes other than to conduct the traffic stop, *see Branch*, 537 F.3d at 337; and (3) arrest Plaintiff, *see Atwater*, 532 U.S. at 354. Finally, although Plaintiff was ultimately not convicted of, or did not plead to, the charges of driving without insurance and driving left of center, his non-conviction does not give rise to a cause of action under § 1983. *See Baker*, 443 U.S. at 145; *DeFillippo*, 443 U.S. at 36. Consequently, the Court concludes Defendant is entitled to qualified immunity with respect to Plaintiff's claims regarding the traffic stop and arrest.

---

[5] Defendant has averred he observed Plaintiff cross the center line [Doc. 23-2 ¶ 2], which is a traffic offense in South Carolina, S.C. Code Ann. § 56-5-1810.

[6] In South Carolina, failure to maintain proof of insurance in a motor vehicle is a misdemeanor. S.C. Code Ann. § 56-10-225(C).

**Defendant's Search of Plaintiff's Car Was Objectively Reasonable**

Generally, an officer must secure a warrant before conducting a search for the search to be reasonable under the Fourth Amendment, but the United States Supreme Court has recognized exceptions to this general rule. *See, e.g.*, *California v. Carney*, 471 U.S. 386, 390 (1985) ("[The Fourth Amendment] is preserved by a requirement that searches be conducted pursuant to a warrant issued by an independent judicial officer. There are, of course, exceptions to the general rule that a warrant must be secured before a search is undertaken."); *United States v. Matthews*, 591 F.3d 230, 234 (4th Cir. 2009) ("The Fourth Amendment generally requires police to secure a warrant before conducting a search. A warrantless search may nevertheless be valid, and the evidence obtained from that search may be admissible, if the search falls within one of the narrow and well-delineated exceptions to the Fourth Amendment's warrant requirement." (citation and internal quotation marks omitted)). One exception to the warrant requirement is an inventory search. *See, e.g.*, *Whren*, 517 U.S. at 811–12; *Matthews*, 591 F.3d at 234. "An inventory search is the search of property lawfully seized and detained, in order to ensure that it is harmless, to secure valuable items (such as might be kept in a towed car), and to protect against false claims of loss or damage." *Id.* at 811 n.1. Accordingly, "[t]he policies behind the warrant requirement are not implicated in an inventory search, nor is the related concept of probable cause." *Colorado v. Bertine*, 479 U.S. 367, 371 (1987) (citations omitted); *see also South Dakota v. Opperman*, 428 U.S. 364, 370 n.5 (1976) ("In view of the noncriminal context of inventory searches, and the inapplicability in such a setting of the requirement of probable cause, courts have held and quite correctly that search

warrants are not required, linked as the warrant requirement textually is to the probable-cause concept. We have frequently observed that the warrant requirement assures that legal inferences and conclusions as to probable cause will be drawn by a neutral magistrate unrelated to the criminal investigative-enforcement process. With respect to noninvestigative police inventories of automobiles lawfully within governmental custody, however, the policies underlying the warrant requirement . . . are inapplicable."). Although not subject to the probable cause and warrant requirements, an inventory search must still be reasonable under the Fourth Amendment; to be reasonable, an inventory search should be conducted pursuant to a policy or practice governing such searches. *See, e.g.*, *Florida v. Wells*, 495 U.S. 1, 4 (1990).

In this case, Plaintiff has failed to offer any evidence beyond his own conclusory statements and, therefore, has failed to demonstrate a genuine issue of material fact as to whether the inventory search was objectively reasonable. *See* Fed. R. Civ. P. 56(c)(1); *Celotex*, 477 U.S. at 323–24; *Ross*, 759 F.2d at 365. The record evidence demonstrates that, because the vehicle had to be towed following Plaintiff's arrest, Defendant conducted an inventory search of the vehicle pursuant to the written policy of the Spartanburg County Sheriff's Department. [Doc. 23-3 ¶¶ 11, 13; *see also id.* at 7–8 (inventory search policy).] Therefore, based on the record before the Court, Defendant's inventory search was objectively reasonable. *See Whren*, 517 U.S. at 811–12; *Wells*, 495 U.S. at 4. Accordingly, the Court concludes Defendant is entitled to qualified immunity with respect to Plaintiff's claims regarding the search of Plaintiff's vehicle.

## **RECOMMENDATION**

Wherefore, based upon the foregoing, it is recommended that Defendant's motion for summary judgment be GRANTED.

IT IS SO RECOMMENDED.

s/Jacquelyn D. Austin<br>United States Magistrate Judge

August 20, 2012
Greenville, South Carolina